Adin Hendrick and Rebecca Hendrick vs. Benjamin Cleaveland.

By the act of 1799, which gave to the widow of a testator, on waiving the provision made for her in the will, *the right to have her dower assigned, in the same manner as though her husband had died intestate*, she is entitled to the *use*, and nothing more, of *one third* of the real estate, during her life.

And she is entitled to no more than one third, although her husband die without issue.

Where the widow waived the provision made for her in her husband's will, and the court of probate decreed her one half of all the real estate of which the testator died seized, such decree was held to be void.

A court of probate is a court of special and limited jurisdiction, deriving all its authority from statute ; and if it appear on the face of its proceedings that it has exceeded the authority given it by law, its orders and decrees are absolutely void, and may be treated as a nullity.

This was an action of *ejectment*, for the recovery of a certain tract or parcel of land in *Morristown*. It appeared on trial in the county court that the action was brought for the lands in question by the said *Adin* and *Rebecca*, as a part of the real estate of *Alexander Donihue*, her late husband, and were a part of the lands claimed by the said *Rebecca*, as decreed to her by the judge of pro-

ORLEANS,    bate for the district of *Fairhaven*, in this state, and that said *Don-*
April,
1828.       *ihue* died testate in the year 1814, leaving no father or children—

Hendrick et ux.  that he had bequeathed certain legacies to said *Rebecca, in lieu of*
vs.
Cleaveland.  *dower*, and which said *Rebecca* had waived within sixty days after
the will was proved and approved, and claimed her allowance
under the statute. The plaintiffs shewed seizin and possession
in said *Donihue*, and that said *Donihue* died seized. The de-
fendant then offered a copy of the will of said *Donihue* and pro-
bate thereof, by which it appeared, that the lands in question were
given by said *Donihue* to the town of *Morristown*, to be rented
for the use of schools in said town. Defendant then offered to
show by parol evidence that he held under the town of *Morris-
town*, and had paid rent to said town ; which was objected to by
the plaintiff upon the ground that the defendant held by lease du-
ly executed and recorded in said town : but the court overruled
the objection, and admitted the evidence. The defendant here
rested his case. The plaintiffs then offered the records of the
court of probate to show that one half of the real estate was de-
creed to the said *Rebecca*, as her share of the real estate of
her late husband, *Alexander Donihue*, which included the
lands in question. To this record the defendant objected,
because it appeared that the judge of probate had ordered
and decreed that said *Rebecca* was entitled to one half of her late
husband's real estate in fee forever, when she was entitled to
the use of only one third during her life : which objection was al-
lowed, and said records excluded.

A verdict was returned for the defendant.

A bill of exceptions, stating the foregoing facts, was agreed to
by the parties, and the plaintiff removed the cause to this Court on
a motion for a new trial, founded on an alleged error in the de-
cision of the county court.

*Fletcher and Sawyer, for the plaintiff.*—The only question in
this case is, if a testator die without issue, leaving a widow, and
in his will leave property to her, and she waive the provisions
made her in the will, what right or benefit she then has in the es-
tate ?

If a widow waive the provisions made for her in the will, she shall
have her dowry assigned her in the *same manner* as though her
husband had died intestate.—*Old stat. p. 175, law of 1799.*—
The *Old stat. p.* 130, *sec.* 30, gives such widow *one half* of both
real and personal estate, which she shall be entitled to *in lieu of her
dower*. Without said 30th section, such widow is entitled to no
part of her husband's estate, not even the *use* of one third,

Such widow can never claim by virtue of the 32d section of said act; for the kind of dower there created and defined is intended for the common benefit of all widows not otherwise provided for; and that, even though there be *issue* who may inherit, though the estate be insolvent, and even though they have been *otherwise endowed* by way of jointure. Therefore, whatever benefit the widow in this case is entitled to out of her husband's estate, she takes by those special benefits granted to her in said 30th section and in said act of 1799; and has no part in the benefit contained in said 32d section.

The dower or portion of the estate here claimed, as well as every kind of dower in this state, is created and defined by our statute. And notwithstanding the dower given by the 32d section is in some respects likened to dower by the common law, (as common law dower stands at this time,) yet, in other respects, is vastly different. For by common law, it is of all a person possessed during coveture. But by said 32d section it is of all a person died seized and possessed in his own right. But the benefit here claimed is perhaps wholly unknown in *England*, notwithstanding there are various kinds of dower known in *England* at this time. It is a benefit created by our statute and is, perhaps, unknown except in *Vermont*. It may be contended that the word dower is strictly a *technical* word, conveying in the word itself its whole definition, or, at least, that but one possible definition could attach to it. But it cannot be so taken, unless it be in its most general sense, as explained or defined by *Cruise, vol.* 1, *p.* 125, as being that which a widow acquires in her husband's lands. It is a benefit which the widow may receive from her husband's estate. In this general sense it may be considered technical. But not with regard to the amount or the kind of estate she may receive. For there are various kinds of dower now extant in *England*. Our statute has also created and defined various kinds of benefits, both in amount and tenure, which the widow shall receive from her husband's estate. One by *sec.* 32*d,* where the widow shall have one third of the real estate for life. One by *sec.* 30*th* and 31*st,* where the widow shall be entitled to have one half of the real and personal estate forever. One by *sec.* 73*d* and *provisos,* where the widow shall be entitled to the whole of her deceased husband's estate. If dower were strictly a technical word, there would have been no necessity of defining the amount or nature of the estate in *sec.* 32*d.* But our several kinds of dower, or modes of being endowed, as well as our law of descents, are created and explained wholly by our statute. Therefore, the only technical definition that can attach to the word dower is, " that kind of benefit which

ORLEANS,
*April,*
1828.
_____
Hendrick et ux.
*vs.*
Cleaveland.

the widow is entitled to receive out of the estate of her husband by operation of law," whether that be by common law, by statute law, whether general or special, or by particular custom. And *Lord Bacon* even says that is the common bye-word of the law, that the law favoreth three things, life, liberty, and dower.— *Cruise, page* 134.

Here, as in *England*, the husband cannot by will divest his widow of that legal claim she has on his estate by operation of law. In *England* the widow is entitled both to what is given her by her husband's will, and dower also. In which last case, she can make her election which she will choose, as by our statute of 1799.—1 *Cruise*, 179, &c.—By the statute of 1799, the widow shall not receive dower and the provisions made for her in her husband's will ; but must elect, even though such provisions be not expressed to be in bar of dower. Therefore, it would seem that the law favors dower, or that which a widow acquires by law in her husband's estate, so that it cannot be taken from her except by her own consent. With us, the law favors the widow so far that she may waive her jointure (her own contract) and claim her legal benefits. She may waive the provisions of a will and claim her legal benefits. And even though an estate be insolvent, yet there is a common benefit decreed to the [widow by the favor of the law. This favor to the widow of what she acquires in her husband's estate, by operation of law, seems ever to have been paramount to every other favor shown to property ; so that it is even coupled with that of life and liberty. It is even so far protected, that it is not liable on a debt due the crown.— *Cruise,* 157.—Neither can the widow's right be devised away by the husband.

But the construction asked for by the defendant in the present case would deprive the widow of all benefit, in as much as she can take no benefit by the said 32*d section.* By such a construction the law, which was intended for a benefit, would have the greatest possible injury. The benefits intended in the 30*th section* would be made void by the *statute of* 1799. For the husband by devising his wife one dollar, or one cent, might thereby deprive her of what otherwise was intended for her by the law.

Again, if the husband without issue should devise one half of his estate to the widow, without severing it from the remainder ; such devise would be void ; for a devise is void if it be of what the law already gives. For in such case she takes by operation of law, and her share must be assigned to her in the same manner as if her husband had died intestate.—4 *Cruise*, 144, 145.—If a particular thing be given or limited in the preceding part of a

ORLEANS,
April,
1827.

Hendrick et ux.
vs.
Cleaveland.

statute, it shall not be taken away or altered by any subsequent general words.—1 *Sw. Dig.* 12, *no.* 15.

*Paddock, for the defendant.*—The inquiry is, If the widow has waived her right under the will, what does the law give her in its stead? The 30th section of the probate act of 1797, gives the half of both personal and real estate to the widow, in certain cases ; but not where there is a *will.* Likewise the 73d section, in case there is no will, gives the whole estate to the widow upon certain conditions. But in no case, where there is a will proved and approved, does the widow receive more than is given her by the 32d section of the same act, unless she takes it as a bequest. The 32d section wisely provides, that a widow may waive her jointure, and not be subjected to the merciless will of an unfeeling husband, after his death ; but upon her petition being filed with the judge, within 60 days after the approval of the will, she shall be put in possession of her dower.—*Old Stat. p.* 165.

The provision that a widow shall have one half of the husband's estate, where he dies intestate, and without heirs, vests in her an indefeasible inheritance ; and though the possession be the same, yet the right or interest in the estate differs very materially from dower, that being nothing more than a reversionary interest ; the statute restraining her right to " the use of one third during her natural life." And if the statute did not thus define the word *dower*, yet no other construction has ever been given to it than that of " use, &c."—*Sec.* 32, *p.* 132.—Having waived her jointure, and being bound by the election, she can claim nothing under the will ; nor can she make claim to the land in question, until such proceedings are had in the probate court as will give her the right of entry : for the lands either pass by the will, or are cast upon the heirs at law, and her dower is carved out of the one or the other, by the legal proceedings of the probate court ; the law not knowing there is a widow but by her application for dower.

What then have been the proceedings in the probate court? Those first had after the widow's making her claim were set aside by the Supreme Court, in January, 1826, because the appraisers appointed by the probate judge were interested, and on the 31st July, 1826, a new order was issued to *Amos Thompson* and *Ezekiel Buel,* directing them to appraise the whole of the real estate of which the said *Donihue* died seized ; make an equal division, and set off the one half to the widow ; which was done and their report accepted by the probate court. Those proceedings were, most unquestionably, void : like any other court, their orders and

ORLEANS,
*April,*
1828.

Hendrick et ux.
*vs.*
Cleaveland.

decrees are binding only, when they act within the sphere of their jurisdiction : but where the court exercises its authority beyond the pale of its jurisdiction, the law does not and cannot carry its decrees into effect. The same would be the case, though less strong, when the court had ordered the sale of real estate, for the payment of debts, where the personal was abundant for that purpose : both order and sale would be void. There is nothing left to the discretion of the probate judge : the right of the widow to the one half must have been given by statute, to authorize the judge so to decree ; but if that right did not exist, by statute, the decree of the probate judge would not give it to her.

PRENTISS, J. delivered the opinion of the Court.—The plaintiffs claim the lands in question under a decree of the court of probate assigning them, with other lands, to *Rebecca Hendrick*, as her share of the estate of *Alexander Donihue*, her former husband. The defendant occupies the lands as tenant to the inhabitants of *Morristown*, who claim title to the lands under the last will and testament of *Donihue*,by which he divised the lands to them to be rented for the support of schools,and disposed of all his other estate, both real and personal, making certain bequests and devises to his wife in lieu of dower. The testator having died without issue, the widow, after probate of the will, waived the provision made for her therein, and claimed one half of the estate ; and the court of probate, by a committee appointed for that purpose, assigned and set off to her, certain parcels of the estate, including the lands in question, being one half in value of all the real estate of which the testator died seized.

The decision of this case must depend upon the construction of the act, *for the probate of wills and the settlement of testate and intestate estates*, passed in 1797, and the act, *declaring the widow of testators entitled to dower*, passed in 1799. *(Comp. Stat. old ed. p.* 119, 165.) These acts were in force at the time of the decease of the testator ; and though they were suspended and repealed by the law of 1821, it was provided, that they should remain in force, as to all things done or transacted during their existence, and all rights and remedies which had accrued under them. By the 1st section of the former act, power was given to every person of full age, and of sound mind, to give, dispose of, and devise, his lands, tenements or hereditaments, by last will and testament in writing, to and among his children, or otherwise, as he should think fit. By the 32nd section, it was declared, that the widow of any *intestate* should, in all cases, be entitled to dower, or the *use* of one *third* of the real estate, of which

such *intestate* died seized and possessed in his own right, for and during *the term of her natural life ;* provided she had not otherwise been endowed, by way of jointure, before marriage ; in which case, she might waive her jointure, and demand her dower. On these provisions, doubts may have existed, whether the widow of a testator was, in any case, entitled to dower. It would seem, however, that as dower is a right given to the wife, in all cases, and particularly and highly favoured by the common law, nothing but express negative words, or an intention clearly and unequivocally expressed in the act, could justify a construction, which would enable the husband, by will, to make an entire disposition of the whole of his estate to the exclusion of his wife, or to defeat her right of dower by making some trifling provision for her. Even where provision is made for the wife in the will, it is not, on common principles, a bar of dower, unless it is declared in express terms, or appears by clear and manifest implication, to be given in lieu of dower ; and where it is so declared, the widow has her election to accept of the testamentary provision, or to refuse it, and take her dower. But it may have been supposed, as already intimated, that the provisions of the act of 1797 would re · quire a construction, which would deprive the wife of dower, unless the husband died intestate ; and this probably was one reason, amongst others, which induced the enactment of the law of 1799, declaring the widows of testators entitled to dower, and adopting, with slight modification, the principle, which has always prevailed in the courts of equity in *England,* and now prevails, according to the modern cases, in the courts of common law. This act provided, that the widow of any testator might, within sixty days after the will of her deceased husband should be approved by the court of probate, waive any provision made for her in such will, and have her dower assigned her, *in the same manner as though her husband had died intestate.* As the prior act had given dower to the widow of an *intestate* in express terms, but was silent as to the widow of a *testator*, it was intended by a new and positive enactment, to give to the latter, on her waiving any provision made for her in the will, the same right to dower as had been previously given to the former : and with respect to the meaning of the enactment, or the extent of the right which was intended to be given by it, it would seem that no reasonable doubt can be entertained. *Dower* is a term of fixed and settled import ; and whether we refer to common or statute law, its definition so far as concerns the question in this case, is equally certain and precise. At common law, it was the right, which the wife had to have and to hold, after the decease of her husband, *during the term of her*

ORLEANS,
*April,*
1828.

Hendrick et ux.
*vs.*
Cleaveland.

ORLEANS,
April,
1828.

Hendrick et ux.
vs.
Cleaveland.

*life*, the *third* part of such lands and tenements, whereof her hus-- band was seized of an estate of inheritance, either in deed or in law, at any time during the coverture. *( Co. Litt. s.* 36.*)* As declared by statute, it was the *use*, as we have already seen, ex- pressed to be given to the widow of an *intestate*, for and during *the term of her natural life*, of one *third* of the real estate, of which the intestate died seized and possessed in his own right. It would seem, then, to be as clear and certain as language could make it, that by the act of 1799, which gave to the widow of a tes- tator, on waiving the provision made for her in the will, the right to have her dower assigned her in the same manner *as though her husband had died intestate*, she was entitled to the *use*, and nothing more, of one *third* of the real estate, *during her life*. Indeed, it is admitted, that this must have been the extent of her right, where the testator died leaving issue.

But it is insisted, that where the testator died without lawful is- sue, as in the present case, his widow, on waiving the provision made for her in the will, was entitled to one *half* of the real and per- sonal estate *forever* ; and in support of this position, the counsel rely upon the 30th section of the act of 1797. This section, it should be noticed, stood connected as a proviso to the 27th sec- tion; and the two sections, therefore, should be read and construed together. The 27th section enacted, that when any person should die seized of any lands, tenements or hereditaments, *not by him devised,* the same should descend to his children, or their legal representatives, &c.; and if the *intestate* should have no child or children, at the time of his decease, such estate should descend, equally, to the next of kin, in equal degree, and those who represented them. *Provided,* as the 30th section declared, that if any person should die *intestate,* after marriage, or, becoming of full age, without lawful issue, the father being alive, he should be entitled to the whole estate of such *intestate* ; unless the intestate left a widow *;* in which case, and also where no father was living at the time of the decease of such *intestate,* she should be entitled to one *half* of the real and personal estate *forever,* after the payment of debts, and other char- ges and expenses *;* which should be *in lieu of her dower.* The whole scope and object of these sections was to regulate the de- scent of *intestate* estates ; and the latter section put the widow, where the husband died without lawful issue, in place of an heir to the estate, with the father. But no right accrued to the widow, under this section, only when the husband died *intestate,* seized of estate *not by him devised* ; and then, she took one half of the estate, not, however, as *dower,* but, as it was significantly expressed, *in*

*lieu of dower.* Where the husband had disposed of his estate by will, the widow, no more than the father, could claim any thing under this section.   In such case, she was bound, either to accept such provision as was made for her in the will, or to waive it, and take her *dower,* or the *use* of one *third* of the real estate *during her life.*   The reasoning which is urged, that the expressions in the act of 1799, " *dower the same as though the husband had died intestate,*" mean the same *share* of the estate as though no will had been made, would in some cases carry the whole estate to the widow, and defeat the will entirely.   By the 73rd section of the act of 1797, when any intestate died seized or possessed of any estate, having no heir by law capable of inheriting the same, the court of probate might order and decree to the widow the whole of the real and personal estate forever.   Now, on the construction given by the counsel for the plaintiffs to the act of 1799, if a man, having no heir, disposed of all his estate by will, his widow, by waiving the provision made for her, would be entitled to the whole estate, to the entire exclusion of the devisees.   Such a construction is unwarrantable and totally inadmissible.   *Dower* in the act of 1799 must be taken in its appropriate sense, and meant the *use* of one *third* of the real estate *during life ;* and where the husband, although he left no issue, did not die intestate, but disposed of his estate by will, the 30th section of the act of 1797 was inapplicable to the case, and the widow could claim nothing under it.

It follows from what has been said, that as the decree, under which the plaintiffs claim the lands in question, assigned to the widow one *half* of the real estate *in fee,* instead of the *use* of one *third* for *life,* it was unauthorized by law, and clearly irregular ; and the only remaining question is, whether the decree is merely voidable, and remains in force until reversed on appeal, or may be treated as absolutely void, and a nullity *ab initio.*   Where a court, which does not proceed according to the course of the common law, but has a special and limited jurisdiction given by statute, proceeds in a manner prohibited, or not authorized by law, the proceeding is void.   Thus the decree of a court of probate, if it has exceeded its authority may be treated as a nullity.   *(Smith* vs. *Rice,* 11 *Mass.* 507.*)*   In *Hunt* vs. *Hapgood,* 4 *Mass.* 117, where the court of probate assigned lands, after the widow's term of dower in them had ceased, to one of the next of kin, to the exclusion of the others, it was held, that as it appeared on the face of the proceeding that the court exercised a power not given by law, and the defect could not be cured by the allegation or proof of any facts whatever, the proceeding was not merely voidable on appeal, but absolutely void.   And in the case of *Sumner* vs. *Park-*

ss

ORLEANS,
*April,*
1828.

Hendrick et ux.
*vs.*
Cleaveland.

er, 7 *Mass.* 79, it was determined that a decree of the court of probate, assigning the reversion of the widow's dower, before the expiration of her term, to one of the heirs, in exclusion of the others, being unauthorized by law, needed no reversal, but might be treated as void. The court said, that all the authority, which the court of probate had upon the subject, was given by statute, and beyond the limits of that authority it could not deprive an heir of his inheritance. If the decree in the case before us had been good on the face of it, it could not be impeached by extrinsic evidence, or avoided, otherwise than on an appeal. If it had assigned only one third of the real estate of the testator to the widow as dower, [any mistake or error, in the exercise of the authority given the court, must have been corrected on appeal; and until a reversal on appeal, the dower would remain fixed and certain, and all persons concerned would be concluded by the proceeding. But on the face of the decree, the proceeding appears to be not simply an erroneous-exercise of authority given the court, but an assumption of power not authorized by law. The record of the court of probate shews, that the will of the testator, by which he disposed of all his estate, was proved and allowed; that the widow waived the provision made for her in the will, and claimed one half of the estate; and that thereupon, the court made an assignment, the effect of which was, to give her a freehold of inheritance in one half of the testator's lands, when by law she was entitled to, and the court had authority to assign her, only an estate for life in one third. Surely, such a proceeding is not to be considered an erroneous act merely, which must be corrected on appeal, but is a nullity upon the very face of it. The court might have as well assigned the whole of the real estate to the widow, as half; and if such had been the proceeding it would not have involved a plainer excess of jurisdiction. As the decree is not the act of a court, which proceeds according to the course of the common law, but of a court having special and limited jurisdiction, deriving all its authority from statute, and it appears upon the face of the proceedings that it exceeded the authority given it by law, the decree must be considered as void.

Judgment affirmed.

*Fletcher & Sawyer*, for plaintiff,
*Paddock*, for defendant.